UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROSEWOOD HOME BUILDERS, LLC,
as successor in interest to ROSEWOOD
HOME BUILDERS, INC.,

                Plaintiff,

   -against-                                         1:11-CV-1421 (LEK/RFT)

NATIONAL FIRE & MARINE
INSURANCE COMPANY,

                Defendant.

## MEMORANDUM-DECISION and ORDER

### I.    INTRODUCTION

On December 5, 2011, Plaintiff Rosewood Home Builders, LLC, as successor in interest to Rosewood Home Builders, Inc. ("Plaintiff"), filed a Complaint alleging breach of an insurance contract. Dkt. No. 1 ("Complaint"). Presently before the Court is a Motion for summary judgment filed by Defendant National Fire & Marine Insurance Company ("Defendant") on May 25, 2012. Dkt. No. 10 ("Motion"). Plaintiff filed a Response in opposition to the Motion on June 22, 2012, and Defendant filed a Reply to the Response on July 12, 2012. Dkt. Nos. 15 ("Response"), 16 ("Reply").

### II.    BACKGROUND

Plaintiff is a company organized and existing under the laws of the State of New York, with its principal office in Albany, New York. Compl. ¶ 1. Defendant is a wholly owned subsidiary of Berkshire Hathaway, Inc. Dkt. No. 5 at 1. Defendant operates under the laws of the State of New York in its surplus insurance business; however, it is a foreign corporation incorporated in the State

of Nebraska, with its principal place of business in Nebraska. Dkt. No. 7 at 1. Accordingly, subject-matter jurisdiction in this case is based on the diversity of citizenship of the parties under 28 U.S.C. § 1332.

This case results from an underlying arbitration award against Plaintiff in an action for negligent construction of a house. Plaintiff seeks indemnity by Defendant for that award. Plaintiff, a construction company, had a commercial general liability ("CGL") insurance policy with Defendant, an insurance company, for the period of September 3, 2002, through September 3, 2003. Compl. ¶ 4; Defendant's Statement of material facts (Dkt. No. 11) ("Def.'s S.M.F.") ¶ 33; Dkt. No. 10-1 ("the Policy"). During this coverage period, Plaintiff constructed and completed a house for Wilfred Burgett ("Burgett"). Compl. ¶ 5; Def.'s S.M.F. ¶ 2. Thereafter, however, Burgett filed a claim against Plaintiff for damages associated with the construction of the house. Compl. ¶ 6; Def.'s S.M.F. ¶ 3. Defendant acknowledged receipt of Burgett's Notice of Intention to Arbitrate alleging a claim against Plaintiff on May 18, 2010. Def.'s S.M.F. ¶¶ 5, 7; Plaintiff's Statement of material facts (Dkt. No. 15-5) ("Pl.'s S.M.F") ¶¶ 5, 7.

On June 4, 2010, Defendant agreed to defend Plaintiff in the action brought against it by Burgett and stated that it would provide Plaintiff with counsel. Def.'s S.M.F. ¶¶ 8-9; Pl.'s S.M.F. ¶¶ 8-9. At the same time, however, Defendant issued Plaintiff a reservation-of-rights notice. Def.'s S.M.F. ¶ 8; Pl.'s S.M.F. ¶ 8. Specifically, Defendant agreed to defend Plaintiff but reserved its right to deny coverage if: "(1) the insured's faulty workmanship did not constitute 'property damage'; (2) the damages did not constitute an 'occurrence'; (3) the alleged property damage was outside the policy period; (4) the 'business risk exclusion'; and (6) the subsidence exclusion." Def.'s S.M.F. ¶ 8; Pl.'s S.M.F. ¶ 8. On June 14, 2010, Plaintiff informed Defendant that it was exercising its right

2

to hire independent counsel and had retained attorney James Hacker to defend the action. Def.'s S.M.F. ¶ 10; Pl.'s S.M.F. ¶ 10.

On September 12, 2011, the arbitrator awarded damages based on Plaintiff's "negligence" in the amount of $130,000 plus statutory interest at the rate of 9% from December 2007 to the date of the award. Def.'s S.M.F. ¶ 31; Pl.'s S.M.F. ¶ 31; Policy at 51. On September 19, 2011, Defendant issued Plaintiff a letter denying coverage because the arbitrator's award revealed that Burgett's damages were not damages that were covered by the Policy. Def.'s S.M.F. ¶ 32; Pl.'s S.M.F. ¶ 32; Compl. ¶10.

On December 5, 2011, Plaintiff filed the Complaint in the instant action based on Defendant's denial of insurance coverage. See generally Compl. In its Complaint, Plaintiff alleges that Defendant's failure to indemnify Plaintiff for the arbitration award constitutes a breach of contract. Id. Specifically, Plaintiff brings the following causes of action: (1) breach of contract; (2) equitable estoppel; (3) declaratory judgment; and (4) violation of New York General Business Law ("GBL") § 349. Id. In response, on May 25, 2012, Defendant filed a Motion for summary judgment asserting that Plaintiff's claims are meritless and that Defendant has no duty to indemnify Plaintiff as Plaintiff's claim for coverage includes property damage not covered by the Policy. See generally Mot.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, if the moving party has shown that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

Defendant submits seven arguments for summary judgment in its favor: (1) Plaintiff's faulty construction of the Burgett house does not constitute an "occurrence" under the terms of the Policy; (2) Plaintiff has failed to establish that there was "property damage" during the Policy coverage period; (3) the Policy's "Damage To Your Work" exclusion bars coverage; (4) the Policy's

4

"Subsidence Exclusion" bars coverage; (5) Plaintiff's equitable estoppel claim is meritless; (6) Plaintiff's GBL § 349 claim is meritless; and (7) Plaintiff's punitive damages claim is meritless. See generally Defendant's Memorandum of law in support of its Motion for summary judgment (Dkt. No. 12) ("Def.'s Mem."). The Court addresses these arguments to the extent needed to resolve the Motion.

### A. Coverage Under the Policy

The Policy was effective from September 3, 2002, to September 3, 2003, and covered Plaintiff for up to $1,000,000 per occurrence. Policy; id. at 68. The Policy covers bodily injury, but "only if: (1) [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory,' [and] (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period." Id. at 78. The policy defines "property damage" as:

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

Id. at 92. An "occurrence" under the Policy is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 91.

Plaintiff completed construction of the Burgett house in June 2003, within the policy period. Def.'s S.M.F.¶ 2; Compl. ¶5; Resp. at 2-3. To determine whether the Policy covers the damage that occurred to the Burgett house, however, the Court must address the following: (1) whether the damage to the Burgett house constituted "property damage" pursuant to the Policy terms; (2) whether the "property damage" was caused by an "occurrence" as defined in the Policy; and (3) if there was in fact "property damage" caused by an "occurrence," whether such damage occurred

5

within the Policy period, thus triggering coverage.

   *1. Property Damage*

Under New York law, an insurance policy covering property is triggered when there has been "damage-in-fact" to the property. Island Lathing & Plastering v. Travelers Indem. Co., 161 F. Supp. 2d 278, 283 (S.D.N.Y. 2001). "Damage-in-fact" means that "'damage to property actually occurred during the period for which the insurer was on the risk.'" Id. at 283-84 (quoting Emp'rs Ins. of Wausau v. Duplan Corp., No. 94 Civ. 3143, 1999 WL 777976, at *26 (S.D.N.Y. Sept. 30, 1999)). An insurance policy may be triggered by property damage "as soon as the effect of those causes is shown to have inflicted measurable, compensable, albeit unascertained, damage . . . during the policy period." Am. Home Prods. Corp. v. Liberty Mut. Ins. Co., 565 F. Supp. 1485, 1498 (S.D.N.Y. 1983); see also Md. Cas. Co. v. W.R. Grace & Co., 23 F.3d 617, 625 (2d Cir. 1994) (applying such a rationale to property damage claims).

Neither party disputes that property damage occurred in this case. See Resp. at 4; Def.'s S.M.F. ¶¶ 25-26. The property damage here was the damage that occurred to the Burgett house as a result of the cracking of its foundation. Id. For the Policy to be triggered, however, the foundation cracking must have been caused by an "occurrence" within the Policy period.

   *2. Whether Property Damage Was Caused by An "Occurrence"*

An "occurrence" is defined by the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at 91. Courts have construed an "occurrence" to be an accident that is unexpected and is evaluated irrespective of the acts leading up to the resulting injury so long as the injury or damage is not intended. See,e.g., Cont'l Cas. Co. v. Rapid-Am. Co., 609 N.E.2d 506, 649 (N.Y. 1993). The New York Court of

Appeals has reasoned that such policy terms are generally construed narrowly, "barring recovery only when the insured intended the damages. . . . A person may engage in behavior that involves a calculated risk without expecting that an accident will occur." Id. (citing City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146, 1150 (2d Cir. 1989) (holding that "ordinary negligence does not constitute an intention to cause damage")).

The Second Circuit Court of Appeals has stated that an "occurrence" does not include claims for mere faulty workmanship but "rather for consequential property damage inflicted upon a third party as a result of the insured's activity." J.G.Z. Res. Inc. v. King, 987 F.2d 98, 102 (2d Cir. 1993). Therefore, "this circuit has held that a CGL policy [does] not provide coverage for a claim against an insured for the repair of faulty workmanship that damaged only the resulting work product." Id. (citing Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co., 961 F.2d 387 (2d Cir. 1992)); see also George A. Fuller Co. v. U.S. Fid. & Guar. Co., 613 N.Y.S.2d 152, 155 (App. Div. 1994) (holding that a CGL policy did not cover damage to the building the insured was hired to build resulting from the insured's faulty workmanship). Accordingly, there is no "occurrence" within the meaning of a CGL policy if property damage: (1) results from faulty workmanship; or (2) is not inflicted on a third person or property. See J.G.Z. Res. Inc., 987 F.2d at 102-03; Jakobson, 961 F.2d at 389; George A. Fuller Co., 613 N.Y.S.2d at 155. This is consistent with the "purpose of a [CGL] policy[,] which is to provide coverage for tort liability for physical damage to others and not for contractual liability of the insured for economic loss because the product or completed work is not what the damaged person bargained for." Hartford Acc. & Indem. Co. v. A.P. Reale & Sons, Inc., 644 N.Y.S.2d 442, 443 (App. Div. 1996).

Plaintiff alleges that "any damages which did occur to the slope occurred as a result of

7

negligence during the building process." Resp. at 4. Specifically, Plaintiff contends that "[a]ny settling or cracking which occurred with respect to the foundation was solely as a consequence of negligence" and was not as a result of a naturally occurring event. Id. As such, Plaintiff contends that "negligence" does not equate to "faulty workmanship," which is how Defendant has characterized the cause of this property damage to disclaim coverage. Plaintiff's Memorandum of law in opposition to Defendant's motion for summary judgment (Dkt. 15-4) ("Pl.'s Mem.") at 7-10.

The Court finds that the property damage to the Burgett house was not caused by an "occurrence." First, the cases on which Plaintiff relies to justify its distinction between "faulty workmanship" and "negligence" do not clearly support such a distinction. Second, the distinction is a red herring in this case because the property damage still would not constitute an "occurrence" as defined by the case law. The property damage in this case was not damage that affected a third person or property, but was damage to the insured's work product. Therefore, under J.G.Z. Resources and Fuller, there was no occurrence. "To hold otherwise would render [Defendant] a surety for the performance of [Plaintiff's] work." Structural Bldg. Products Corp. v. Bus. Ins. Agency, Inc., 722 N.Y.S.2d 559, 562 (App. Div. 2001); George A. Fuller Co., 613 N.Y.S.2d at 155 ("To interpret the policy as did the [lower court] would transform [the insurer] into a surety for the performance of [the insured's] work. [The insurer's] liability policy was never intended to insure [the insured's] work product or [his] compliance, as a general contractor or construction manager, with its contractual obligations.").

Accordingly, because there is no "occurrence," the coverage for this claim is not triggered. The issue of whether or not such property damage occurred within the Policy period is therefore irrelevant and the remaining policy exclusions are not germane to the coverage at issue.

8

**B. Breach of Contract and Duty to Indemnify**

In New York, "an insurer's obligation to indemnify an insured must be based on the insurance agreement." Jakobson, 961 F.2d at 389. Once an insured files a claim pursuant to an insurance agreement for coverage, however, an insurer bears the burden of establishing that the insured is not covered under the agreement. See McCormick & Co., Inc. v. Empire Ins. Grp., 878 F.2d 27, 29 (2d Cir. 1989). Here, Defendants have established that Plaintiff's claim is not covered under the Policy because it did not arise from an "occurrence" within the Policy period. See supra Part IV.A.2.

Under New York law, an insurer does not have a duty to indemnify the insured if the insurer can demonstrate "as a matter of law that there is no possible factual or legal basis on which it might be obligated to indemnify its insured under any policy provision." Allstate Ins. Co. v. Zuk, 574 N.E.2d 1035, 1037 (N.Y. 1991). Accordingly, the "'[m]ere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact.'" Goldman v. Metro. Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005) (citing Bethlehem Steel Co. v. Turner Constr. Co., 141 N.E.2d 590, 593 (N.Y. 1957)). Here, the Policy explicitly lays out the situations in which coverage would be afforded as well as the exclusions and limitations to coverage. See generally Policy. The Policy also provides term definitions that are consistent with standard CGL policies and case law. Therefore, Plaintiff's claim for coverage fails because there cannot be a breach of contract where the insured's claim did not qualify for coverage under the contract. The Court therefore grants Defendant's Motion for summary judgment on Plaintiff's breach-of-contract claim.

### C. Equitable Estoppel

Equitable estoppel is a legal doctrine that limits the ability of an insurer to delay decisions regarding the coverage of a claim subsequent to its decision to defend the underlying action. The doctrine "precludes the insurer from denying coverage if: (1) the period of time taken by the insurer to determine compliance is unreasonable under the circumstances, and (2) the defense offered by the insurer during that period prejudices the insured." Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 274 (2d Cir. 1987). As a result, an insurer may be equitably estopped from denying insurance coverage under the terms of a policy when, "without asserting policy defenses or reserving the privilege to do so, [the insurer] undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." Albert J. Schiff Assoc. v. Flack, 417 N.E.2d 84, 87 (N.Y. 1980). However, although an insurer may undertake the defense of an insured's claim, the insurer may reserve its right "to claim that the policy does not cover the situation at issue, while defending the action." O'Dowd v. Am. Sur. Co. of N.Y., 144 N.E.2d 359, 363 (N.Y. 1957).

The Court finds that Plaintiff has failed to demonstrate an actual showing of prejudice by Defendant in disclaiming coverage. Instead, Plaintiff's claim is baseless and does not demonstrate facts that would justify a showing that Defendant's acts or conduct in reserving its rights and subsequently disclaiming coverage prejudiced Plaintiff or the outcome of the arbitration.

The facts relevant to this analysis are as follows. Upon receiving the arbitration notice and a claim for coverage by Plaintiff, Defendant issued Plaintiff a reservation-of-rights notice stating that Defendant agreed to defend Plaintiff in the underlying action with certain limitations. Def.'s S.M.F. ¶ 8; Pl.'s S.M.F. ¶ 8. Subsequently, Plaintiff exercised its right to independent counsel and

informed Defendant that it had retained its own counsel to defend the action. Def.'s S.M.F. ¶ 10; Pl.'s S.M.F. ¶ 10. Once arbitration had commenced, Plaintiff's counsel defended the action while Defendant allegedly kept abreast of the case and provided for expert fees and costs. Def.'s S.M.F. ¶¶ 11-32; Def.'s Mem. 20-22. Finally, once the arbitration award had been issued and liability was clear, Defendant, pursuant to its reservation-of-rights letter, issued Plaintiff a letter disclaiming coverage based on the arbitrator's award. Def.'s S.M.F. ¶ 32; Pl.'s S.M.F. ¶ 32.

The Court finds that based on the evidence, Defendant reasonably disclaimed coverage as Defendant's disclaimer was based on evidence that was produced during the arbitration. Plaintiff alleges that Defendant disclaimed coverage fifteen months after issuing the reservation-of-rights letter. Pl.'s Mem. 5. However,"[a] reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage." Hartford Ins. Co. v. Nassau County, 389 N.E.2d 1061, 1062 (N.Y. 1979). Plaintiff specifies no facts to show how a delay, if any, prejudiced Plaintiff beyond its speculation that it could have obtained a more favorable arbitration award if it has known of the disclaimer earlier. Therefore, the Court grants Defendant's Motion for summary judgment on Plaintiff's equitable estoppel claim.

### D. GBL § 349

GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." The statute provides injured consumers with a private right of action and applies to "virtually all economic activity." Karlin v. IVF Am., 712 N.E.2d 662, 665 (N.Y. 1999); N.Y. GEN. BUS. LAW § 349. However, because it is a broad consumer protection statute, § 349 applies to typical consumer transactions and not to private contract disputes unique to the parties. See Oswego Laborers' Local 214 Pension Fund v. Marine

Midland Bank N.A., 647 N.E.2d 741, 744 (N.Y. 1995) (citing Genesco Entm't v. Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (holding that a negotiation for the rental of a stadium was a "single shot transaction" and thus not a typical consumer transaction that would be covered under § 349)); see also Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr., 873 N.Y.S.2d 679, 685 (App. Div. 2009). The statute applies to "representations or omissions . . . likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego, 647 N.E.2d at 533.

To state a cause of action under § 349, a plaintiff must plead that the nature of a defendant's conduct was consumer oriented—essentially, that a defendant's acts or practices have an impact on the population at large. Id. at 532. Further, " a prima facie case requires . . . a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." Id.

Plaintiff contends that Defendant engaged in deceptive acts and practices in violation of § 349. Plaintiff alleges that Defendant failed to investigate the claim, failed to retain experts during the defense of the action, and failed to indemnify Plaintiff for the judgment awarded against it. Plaintiff contends that such conduct not only is in violation of § 349 but also is a part of a broader pattern and practice of deceptive business practices by Defendant. The Court finds that Plaintiff has failed to demonstrate that Defendant's conduct was of the character affecting the consumer population at large. Plaintiff does not cite to any specific facts, instances, or examples that would make such a showing. Further, aside from the broad allegations in Plaintiff's Complaint, Plaintiff does not refer to Defendant's alleged violation of § 349 in its Memorandum of law or elsewhere to provide a clearer explanation. Therefore, the Court grants Defendant's Motion for summary judgment on Plaintiff's § 349 claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 10) for summary judgment is **GRANTED in full**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.

DATED:	March 29, 2013
	Albany, New York

Lawrence E. Kahn
U.S. District Judge